IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 2:07cv1058-MHT |
| ) | (WO) |
| GARY BLACKWELL and ) | |
| BLACKWELL IGOR'S, INC., a ) | |
| business incorporated in ) | |
| the State of Alabama, ) | |
| ) | |
| Defendants. ) | |

OPINION

Plaintiff J & J Sports Productions, Inc. filed this lawsuit against defendants Gary Blackwell and Blackwell Igor's, Inc. on December 3, 2007, asserting violations of 47 U.S.C. § 605, which prohibits the unauthorized use of communications (including satellite signals), and 47 U.S.C. § 553, which prohibits the unauthorized reception of cable services. J & J Sports also asserts a state-law

claim of conversion. The court's jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

This matter is now before the court on J & J Sports's motion for default damages and attorney's fees. For the reasons that follow, the motion for damages will be granted in the sum of $ 2,500, and the motion for attorney's fees will be denied.

## I. BACKGROUND

J & J Sports, a commercial distributor of televised sporting events, owned the exclusive, nationwide distribution rights to "No Respect": Jermaine Taylor v. Bernard Hopkins II, Undisputed Middleweight Championship Fight Program, broadcast on closed-circuit television on Saturday, December 3, 2005.

Prior to the broadcast of "No Respect," J & J Sports had noticed a sharp decline in the sales of its programming to commercial customers. Suspecting piracy, the company hired investigators to "police [its]

2

signals." Gagliardi Aff. at 2. On December 3, 2005, one investigator observed the "No Respect" program being shown by the defendants at Igor's Oyster Bar in Montgomery, Alabama. The bar had not paid for the right to televise the event.

Because the defendants failed to respond to this lawsuit, J & J Sports filed a motion for default judgment against them. In its motion, J & J Sports submitted very limited information regarding damages. The motion itself was barely more than one page, and it cited no case law. Instead, J & J Sports merely restated the counts alleged in the complaint and requested maximum statutory damages on count one (§ 605) and count two (§ 553). The motion also requested unspecified compensatory and punitive damages on count three (conversion) and unspecified attorney's fees. Attached to the motion was only one affidavit, from the president of J & J Sports, which requested the statutory maximum in damages but provided

almost no factual basis upon which the court could make a determination of damages.

As a result, the court issued an order granting the motion for default judgment but explaining that default cash damages cannot "properly be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." J & J Sports Prods., Inc. v. Blackwell, 2008 WL 4767492, at *1 (M.D. Ala. Oct. 28, 2008) (Thompson, J.) (quoting Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985) (internal quotations and citations omitted)). "Damages may be awarded," the court stated, "only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." Id. (quoting Adolph Coors, 777 F.2d at 1544). The court therefore ordered the parties to submit additional evidence and briefing on the subject of damages and directed the parties to brief the permissibility of

awarding damages under both § 553 and § 605.  Id. at *2.

J & J Sports responded by submitting only a short list of fees charged to customers for the "No Respect" showing and a table of expenses incurred to broadcast the program; J & J Sports failed entirely to brief the issues identified by the court.  In accordance with their pattern in this case, the defendants did not respond at all to the court's order.  The court must now decide the issue of default damages and attorney's fees on the limited evidence that has been submitted.

## II. DISCUSSION

### A.

The court must first determine whether it is appropriate to award damages for both count one (§ 605) and count two (§ 553) based on a single offense.  As to count one, "[t]he Federal Communications Act, 47 U.S.C. §§ 605 et seq., prohibits commercial establishments from

intercepting and broadcasting to its patrons <u>satellite</u> cable programming." J & J Sports Prods. Inc., v. Cortes, 2009 WL 801554, at *2 (N.D. Cal. March 25, 2009) (Breyer, J.) (emphasis added).  Under the Act, a court may award actual or statutory damages between $ 1,000 and $ 10,000 for each violation, 47 U.S.C. § 605(e)(3)(C)(i)(II), and if a violation is "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," a court may award an additional $ 100,000.  47 U.S.C. § 605(e)(3)(C)(ii).

As to count two, the Cable and Television Consumer Protection and Competition Act, 47 U.S.C. §§ 553 et seq., provides a very similar cause of action but addresses interceptions that occur by way of <u>cable</u> systems.  A court may grant statutory damages between $ 250 and $ 10,000 per violation, 47 U.S.C. § 553(c)(3)(A)(ii), and up to $ 50,000 may be awarded if the court finds that the act was violated willfully.  47 U.S.C. § 553(c)(3)(B).

In this action, J & J Sports has not clarified whether the conduct complained of was a violation of § 605 (satellite) or § 553 (cable). "It seems obvious, however, that it cannot be both. The court is unpersuaded that a perpetrator would commit double piracy by using both a cable box and a satellite to broadcast a single simultaneous program." J & J Sports Prods., Inc. v. Guzman, 2009 WL 1034218 at * 2 (N.D. Cal. April 16, 2009) (Patel, J); see also TKR Cable Company v. Cable City Corp., et al., 267 F.3d 196 (3d Cir. 2001) (holding that a defendant cannot be held liable under § 553 and § 605 for the same conduct); accord J & J Sports Prods., Inc. v. Munguti, 2007 WL 928479 (D. N.J. Mar. 27, 2007)(Linares, J). J & J Sports's affidavit does not mention whether its investigators saw a cable box or a satellite dish at Igor's bar. Because a cable box is more easily hidden than a satellite dish, it seems more likely that the defendants violated § 553. See id. ("[Plaintiff's auditor] stated he saw neither a satellite

dish nor a cable box. Given that a cable box is more easily hidden, the court finds that defendants violated section 553, but not section 605."); see also J & J Sports Prods. Inc. v. Man Thi Doan, 2008 WL 4911223, at *3 (N.D. Cal. Nov. 13, 2008) (Whyte, J.) (finding that a single broadcast could not violate both codes and holding that § 553 was the more likely violation).

B.

The court must now determine the amount of statutory damages to be awarded under § 553(c)(3)(A)(ii).  J & J Sports requests the statutory maximum, citing the negative influence that pirating generally has on its business.  However, in determining default-judgment awards, "the burden is on [the plaintiff] to provide justification for why damages in excess of the minimum should be awarded." DIRECTV, Inc. V. Huynh, 318 F. Supp. 2d. 1122, 1131-1132 (M.D. Ala. 2005) (Thompson, J.).  And courts have noted that, "'in the absence of unusual or

particularly egregious circumstances under which a defendant broadcasts the fight,' maximum statutory damages are inappropriate." Guzman, 2009 WL 1034218, at * 3 (citing Don King Prods. v. Maldonado, 1998 WL 879683, at *1 (N.D. Cal. December 11, 1998) (Orrick, J.)).

In this case, beyond reporting that Igor's Bar was showing the "No Respect" program on its televisions, J & J Sports has provided no information regarding the extent of the defendants' actual violation in this case, and there is nothing to suggest this violation was particularly serious, let alone 'egregious.'  In fact, J & J Sports has provided only one exhibit that offers any context for the court's damages determination: a table that lists the prices charged for the right to broadcast the "No Respect" program legally.  Pl.'s Br. Supp. Damages (Doc. No. 31) Ex. B.  The charges ranged from $ 1,200 (for 1-50 patrons) to $ 6,200 (for 401-500 patrons).

9

Although J & J Sports submitted no evidence as to how many people watched the "No Respect" program in Igor's Bar, the defendants would have been required to pay, at a minimum, the base price of $ 1,200.  This is a starting point for determining damages, but the court is also aware that statutory damages should provide some deterrence.  As such, the court determines that statutory damages of $ 2,500 is an appropriate award in this case.  It should duly compensate J & J Sports for any lost fees, and it should deter future violations, as it is more than double what the defendants would have paid to broadcast the "No Respect" program legally.  See Guzman, 2009 WL 1034218, at *3 (finding statutory damages of $ 4,000 to provide sufficient deterrence where it was "twice what defendants would have had to pay" to license the event properly.); see also J & J Sports Prods., Inc. v. Valdez, 2008 WL 5158249, at *2 (S.D. Tex. Dec. 4, 2008) (Kazen, J.) (citing need for deterrence and awarding damages of

$ 1,500 where minimum charge for broadcasting event was $ 1,000).

J & J Sports also requests damages pursuant to § 553(c)(3)(B) for willful violation of the statute, arguing that the defendants must have violated the statute willfully because one cannot accidentally receive such programs.  However, no evidence has been submitted to support this argument.  Even more, the text of the statute suggests the opposite conclusion; § 553(c)(3)(C) provides that, where "the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum not less than $ 100."  If all violations of § 553 were to be considered willful, this instruction would be senseless and superfluous.  See Guzman, 2009 WL 1034218, at *3 (rejecting argument that all violations of § 553 are "per se willful."); see also Valdez, 2008 WL 5158249, at *3 (awarding $1,000 in enhancement damages because plaintiff

provided evidence that defendant charged for admission on the night of the broadcast, suggesting the violation was willful.)  As J & J Sports failed to provide any evidence regarding willfulness in this case, no damages will be awarded under § 553(c)(3)(B).

C.

J & J Sports shall also receive no damages for count three (conversion).  In response to the court's order, J & J Sports requested $ 2,200 in compensatory damages and $ 25,000 in punitive damages on this claim.  Once again, however, no evidence or argument was offered as to why J & J Sports should be entitled to such damages over and above the statutory damages already provided on count two.  See Guzman, 2009 WL 1034218, at * 4 (rejecting conversion claim where no evidence provided and damages already awarded under § 553); see also Man Thi Doan, 2008 WL 4911223, at *3 (same).

**D.**

Finally, J & J Sports submitted no evidence regarding its request for attorney's fees and costs. In fact, despite the court's order, J & J Sports never even requested a specific amount in fees. As such, the court awards no fees or costs.

***

For the reasons stated above, the court will award J & J Sports damages for only count two and only in the amount of $ 2,500. The court will deny all other requests for monetary relief. An appropriate judgment will entered.

DONE, this the 21st day of July, 2009.

      /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE